Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>RONALD GARRIS, JR.,<br><br>*Defendant*. | Crim. No. 15-229<br><br>**OPINION & ORDER** |

**VAZQUEZ, DISTRICT JUDGE**

Pending before the Court is Defendant Ronald Garris, Jr.'s motion to modify his sentence and for immediate compassionate release. D.E. 31, 31-1 ("Br."). The government filed opposition, D.E. 33 ("Opp."), to which Defendant replied, D.E. 34 ("Reply"). The Court reviewed the parties' submissions and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). For the following reasons, the Court denies the motion.

**I.   Background**

On May 14, 2015, Defendant pled guilty to an information charging him with sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c). D.E. 21, 23. Defendant also entered into a plea agreement, pursuant to Federal Rule of Procedure 11(c)(1)(C), in which the parties agreed to a sentencing range of 120 to 144 months imprisonment. D.E. 25. Defendant had met the minor on social media and then convinced her to perform sex acts for money while Defendant acted as her "pimp." PSR ¶ 12.

Defendant was sentenced on December 9, 2015. D.E. 29 ("Sent. Tr."). Garris' criminal history category was VI and his United States Sentencing Guidelines' range was 188 to 235

months. *Id.* at 4. Although only 31 at the time of sentencing, Defendant's criminal history category score was 22, and several convictions were not counted, such as his offense at age 16 for a sexual assault on a 10-year-old. *Id.* at 15. The Sentencing Court observed that "I find troubling too, that he gets arrested on this. The feds didn't take it over at that point. He goes to the State, and then while is out, he makes bail, and he goes back to doing exactly the same thing." *Id.* at 10; *see also id.* at 13 (Defendant acknowledging that he was released after being charged by the state and then "did the same thing all over again"). At the time of his federal sentencing, Garris was also pending sentencing in state court, for which he was to receive a concurrent sentence, and facing a violation of probation in state court. *Id.* at 7, 12. He had also tampered with a witness in the state case. *Id.* at 16.

Judge Linares ultimately sentenced Defendant to 144 months imprisonment, noting that without the excellent work of defense counsel, it was unlikely that Garris could have made a successful argument for such an extensive downward variance. *Id.* at 18-19, 20. Judge Linares, reasoned, in part, as follows:

> [W]hen a defendant like this continues to commit other crimes while he is out, continues to indicate his willingness to commit other crimes once he does get out, even though he has been on probation and he's violated, he has been in prison, comes back and commits other crimes, is there a situation here where there is a need to impose a sentence that is not at the bottom of the range, so that there is individual deterrence here specifically . . . that protects the public from this type of activity for as long as possible while giving the defendant an opportunity to obtain whatever vocational or educational or psychological care he needs to deviate away from this life of crime that has been defining his life ever since he was a young kid.

*Id.* at 19-20. After being arrested, Defendant admitted that he had been "pimping" women and then stated, in substance, "I f----d up trying to pimp p---y . . . When I get out, I'm going to buy cocaine and going to do what I do best, cook rock."

2

Garris is currently housed at FCI Fairton and has a scheduled release date of July 9, 2025.

Defendant posits three reasons demonstrating extraordinary and compelling reasons for release: (1) he helped save an inmate who was attempting to commit suicide, (2) the Bureau of Prisons ("BOP") has not given him proper credits toward his sentence, and (3) he has rehabilitated himself through numerous programs. As to the first point, Garris indicates that on July 9, 2019, he and another inmate heard noises in a closet. Br. at 1. On opening the door, Garris saw an inmate attempting to hang himself; Garris then held the inmate's legs to prevent him from dying while the other inmate he was with untied the rope. *Id.* Turning to the second point, Defendant asserts that the BOP has not given him credit as ordered by Judge Linares. *Id.* at 2-3. Finally, Defendant indicates that he has completed numerous behavioral and vocational programs, including a 500-hour residential cognitive behavioral therapy program. *Id.* at 4. He continues that since June 2018, he has served as a mental health companion for other inmates and that since January 2019, he has acted as a suicide watch companion. *Id.* at 4.

In opposition, the Government asserts that the jail credit issue should be raised in a motion pursuant to 28 U.S.C. § 2241. Opp. at 10. The Government notes that while it is commendable that Defendant helped stop a suicide, he did not put his life in danger while doing so as required by the caselaw on which Defendant relies. *Id.* at 9. The Government also notes that rehabilitation alone cannot constitute extraordinary and compelling reasons for early release and that Defendant's criminal history and crime countenance against release. *Id.* at 9-10.

## II. Legal Standard

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

    (1) in any case—

>   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—
>
>   >   (i) *extraordinary and compelling reasons warrant such a reduction*; or
>   >
>   >   (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;
>   >
>   >   *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
>   (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added). The parties agree that Defendant has satisfied the exhaustion requirement. Opp. at 3.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018)

4

("U.S. Sentencing Guidelines Manual"). The application notes to the section provide four circumstances that can be considered extraordinary and compelling: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons. *Id.* cmt. n.1(A)-(D). In *United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021), the Third Circuit found that the policy statement was not binding on courts but nevertheless found that the statement could provide useful guidance.

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a). They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant. *Id.*

### III. Discussion

The Court denies Garris' motion. Turning first to the jail credit issue, the Court agrees with the Government that 18 U.S.C. § 3582(c)(1)(A) is not the appropriate vehicle under which to seek relief. 18 U.S.C. § 3585(b) addresses "[c]redit for prior custody." The Attorney General, through the BOP, is responsible for computing custodial credit. *United States v. Wilson*, 503 U.S. 329, 333-36 (1992). If an inmate disagrees with the BOP's calculation, then the inmate may seek relief under 28 U.S.C. § 2241. *See, e.g.*, *Holloman v. Warden Fairton FCI*, 635 F. App'x. 12, 14 (3d Cir. 2015); *United States v. Dowling*, 488 F. App'x. 592, 593 (3d Cir. 2012). Defendant apparently agrees, indicating that he has since filed a separate petition pursuant to Section 2241 as to the jail credit issue. Reply at 6. As a result, the Court does not consider the custodial credit argument in deciding this matter.

Turning to Defendant's remaining arguments, Garris fails to cite any authority indicating

5

that rehabilitative efforts, standing alone, can be sufficient to meet the extraordinary and compelling requirement. In addressing the issue, Chief Judge Wolfson found that such efforts could not, explaining as follows:

> Defendant contends that he is entitled to compassionate release based on his "exemplary good behavior and [his] accomplishments" during his incarceration and because his "self-improvement is truly beyond the ordinary." (*See* ECF No. 31, at 3.) However, the Policy Statement makes clear that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13, Application Note 3; *see also* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Instead, a defendant's rehabilitation may only "contribute to extraordinary and compelling reasons." [*United States v.* ]*Rodriguez*, 451 F. Supp. 3d [392], 405 [(E.D. Pa. 2020).] . . . While the Court commends Defendant for taking these efforts to rehabilitate and educate himself, those efforts, alone, cannot demonstrate "extraordinary and compelling reasons" to warrant his release. Accordingly, Defendant's motion for a reduction of sentence based on his rehabilitation and good behavior is denied.

*United States v. McNair*, 481 F. Supp. 3d 362, 369-70 (D.N.J. 2020) (footnotes omitted). The Court acknowledges that the policy statement is not binding but nevertheless finds it to be persuasive.

Thus, the question remains whether Defendant has carried his burden of proof in light of his rehabilitation and his act to save another inmate from suicide. The case on which Defendant relies, *United States v. Logan*, 532 F. Supp. 3d 725 (D. Minn. 2021), stands for a different proposition. The *Logan* court noted that rehabilitative efforts should generally be given little weight because rehabilitation is the rule rather than the exception. *Id.* at 739 (citations omitted). The Court also noted that "there could be truly extraordinary instances of rehabilitation, such as a defendant who *risks his life* to help his fellow inmates in a pandemic or to rescue a corrections officer who has come under attack[.]" *Id.* at 735 (emphasis added). Here, Garris helped save

another person's life and for those actions, the Court commends him.  Unlike the dicta in *Logan*, however, Garris did not put his own life at risk in doing so.  *Logan* is inapposite.

More importantly, the Court finds that Defendant has not met his burden in light of his history.  Defendant has spent several years of his life trying to improve himself while incarcerated.  But Defendant spent a much longer period time inflicting harm.  Indeed, he had already accumulated 22 criminal history point by the age of 31.  The facts and circumstances of his offense were horrific – he had an underage female prostitute herself for his financial gain.  While he claims to have turned a corner, when he was first released, he reoffended; he tampered with a witness; and he commented that he was going to stick to drug distribution in the future.  Those acts and words cannot be overlooked.  Due to the Rule 11(c)(1)(C) plea, Defendant's guideline range was reduced dramatically.  And as Judge Linares noted, it is doubtful that Defendant would have received such a variance absent a binding plea agreement.

Defendant has not sustained his burden, and his motion is denied.

IV.   **Conclusion**

For the foregoing reasons, and for good cause shown,

IT is on this 11th day of January 2022 hereby

**ORDERED** that Defendant's motion for early termination of his supervised release, D.E. 31, is DENIED; and it is further

**ORDERED** that the Clerk's Office shall serve a copy of this Order & Opinion on Defendant by regular mail and certified mail return receipt.

John Michael Vazquez, U.S.D.J.

7